UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| farmlandmarketinggroup.com; farmlandmarketinggroup2.com growersliquidityfund.com; americanfarmlandpartners.net; americanfarmlandpartners.mobl; americanfarmlandpartners.info; americanfarmlandpartners.org; americanfarmlandpartners.me; americanfarmlandpartners.ca; americanfarmlandpartnersstore.com; americanfarmlandpartners.biz; americanfarmlandpartners.us; theamericanfarmlandpartners.com; americanfarmlandpartners.com; americanfarmlandpartners.tv; theagriculturealnetwork.com; midwestfarmlandpartners.com; midwestfarmlandpartners2.com; farmersunite.com; tracylynnboltonagriculture.com; todddyeragriculture.com; tracylynn - Tracy Bolton - shopper ID 50098270 (online storeage - 100GB); and tracy@farmlandmarketinggroup.com - Tracy Bolton - shopper ID 42373755 (online storage - 1GB) that is stored at premises owned, maintained, controlled, or operated by GoDaddy.com, LLC, a company headquartered at 14455 N. Hayden Road, Ste. 219, Scottsdale, AZ 85260 | Case No. 12-M-483 |

## AFFIDAVIT OF RHONDA KARPINSKI

1.  I am a Special Agent with Internal Revenue Service – Criminal Investigation (IRS-CI), and am one of the case agents assigned to the investigation detailed in the affidavit filed in support of the above-described search warrant.

2.  On June 25, 2012, this Court issued six search warrants, including one in the above-captioned matter. These warrants were issued based on my application and affidavit. On July 3, 2012, fellow agents from the IRS and the Federal Bureau of Investigation executed a search warrant on the the residence of Todd Dyer. Dyer is the chief target of the investigation detailed in the search warrant affidavit.

3.  The investigation of the alleged fraud scheme as detailed in the search warrant affidavit is ongoing and will be most effectively conducted if the affidavit to this and the other five search warrants remains sealed to the targets of the investigation and the general public.

As examples of the ongoing nature of the investigation, the following work must still be completed:

    a) I have identified approximately 22 people across the country who invested money in the described scheme to defraud. I and fellow federal law enforcement agents will need to interview all these individuals and obtain and analyze any records or correspondence they have concerning the scheme to defraud.

    b) On July 6, 2012, I faxed to four separate entities, including the above, five search warrants requiring the entities to provide emails, website records, and other electronically-stored information that is evidence of the fraud scheme. The analysis of this evidence by those of us involved in this investigation is expected to take a significant amount of time.

    c) On July 3, 2012 a large amount of business records and electronic evidence was seized from Dyer's residence. The analysis of this evidence by those of us involved in this investigation is expected to take a significant amount of time.

4. For the reasons described in the following paragraphs, I believe that Todd Dyer will make an effort to obstruct the continuing investigation of this fraud scheme. His efforts in this regard will be enhanced if he obtains the search warrant affidavit before I have completed the remainder of my investigation. The affidavit details the operation of his fraud scheme, names his co-conspirators who operated and carried out the fraud scheme with him, identifies the chief business entities that Dyer and his co-conspirators used in the fraud scheme, identifies the banks and financial transactions used by Dyer and his co-conspirators to divert investor funds to their own personal use, identifies (by their initials) the victims of the scheme, identifies several

witnesses who provided information to law enforcement agents about the scheme, and discloses that an undercover agent was used to investigate Dyer and his co-conspirators.

5. As described in the search warrant affidavit, J.W., Dyer's former girlfriend, and the mother of two of his children, provided extensive background information to me and other agents about Dyer's operation of this fraud scheme (See affidavit ¶¶ 26 – 34). The search warrant affidavit also includes information that in December 2010 Dyer learned that J.W. had provided information to law enforcement agents about his financial activities. As a result, he typed a letter and presented it to J.W. to sign repudiating her previous statements (See affidavit ¶¶ 82A. – 82C.). Also, I have listened to a saved voicemail message left by Dyer on July 6, 2012, or shortly thereafter, in which he requests that this Court provide him with the search warrant affidavit and then asks whether the government told this Court that J.W. was bipolar and schizophrenic. In his message, Dyer also stated that he had a letter signed by J.W. in which she admitted lying to law enforcement investigators.

6. I have also listened to a voicemail message that Dyer left for Assistant United States Attorney Scott J. Campbell on July 5, 2012. AUSA Campbell has assisted me in this investigation and Dyer knows of his involvement. In that voicemail, Dyer requested that AUSA Campbell provide him with a copy of the affidavit "that was given to Judge Callahan to justify the search of my home."

7. On July 3, 2012, FBI Agent Michael Johnson interviewed Dyer during the course of the execution of the warrant on Dyer's residence. During the course of the interview, Dyer made statements to agent Johnson stating that he knew about agent Johnson's professional background and assignments as an FBI agent, and provided specifics about agent Johnson's

background. Agent Johnson stated that he believed that Dyer was mentioning specifics of his background in an effort to intimidate him.

8. In summary, because of the continuing nature of this investigation and the amount of work still ahead, I request that the affidavit to this search warrant be sealed to prevent Dyer from intimidating or otherwise influencing witnesses to, and victims of, the alleged fraud scheme and to prevent premature notification of Dyer and the other subjects of the evidence in our possession before we have a chance to confront them with it in the course of interviewing or re-interviewing them.

_____
RHONDA R. KARPINSKI

Subscribed and sworn to me this
_____ day of July, 2012.

_____
Notary Public, State of Wisconsin
My commission is permanent